Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 53 | **DATE** | 8/14/2003 |
| **CASE TITLE** | Island vs. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner Michael Island's petition for a writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | 29 |
| | Notified counsel by telephone. | AUG 1 5 2003 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | 03 AUG 14 PM 5:55 | date mailed notice |
| TH ✓ | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES OF AMERICA, ex rel. )
MICHAEL ISLAND, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Petitioner, )
　　　　　　　　　　　　　　　　　　　　) No. 01 C 0053
　　　　　　　　　　　　　　　　　　　　)
MARK A. PIERSON, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Respondent. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Following a bench trial, the Circuit Court of Cook County convicted Petitioner Michael Island of first-degree murder on October 16, 1995, and subsequently sentenced Petitioner to forty-five years' imprisonment. Both the Illinois Appellate Court and the Illinois Supreme Court affirmed Petitioner's conviction on direct appeal. Petitioner then filed a petition for post-conviction relief. The Circuit Court of Cook County summarily dismissed Petitioner's claims, and the Illinois Appellate Court and Illinois Supreme Court affirmed the dismissal. Petitioner now seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State, on behalf of Mark Pierson, Warden of the Hill Correctional Center ("Respondent"), contends that Petitioner's claims are procedurally defaulted, non-cognizable for habeas review, or without merit. For the reasons stated herein, the Court denies Island's petition.

### BACKGROUND

On October 10, 1993, Aaron Harris was shot and killed on his front porch. Harris, a member of the Vice Lords, a Chicago street gang, worked "security" for Petitioner's gang, the

Mickey Cobras. Harris served as a police lookout for the Mickey Cobras while they sold narcotics. At Petitioner's trial, Charles Benson and Roddrick Sisson, members of the Mickey Cobras, testified that members of the gang had met to plan the murder of Harris. The Mickey Cobras wanted to retaliate against Harris for stealing a gun from them. Benson and Roddrick testified that Petitioner attended this meeting. While Benson and Sisson's testimony conflicted with respect to the details of that meeting, both testified that they agreed Petitioner would shoot Harris.

The evidence clearly placed Petitioner at Harris' home at the time of the murder. Petitioner admitted that he was at Harris' home. He testified that he was discussing plans for Harris, Harris' common law life Tanya Freeman, and her two daughters Nicole and Moshanique, to move into Petitioner's building. Freeman testified, however, that this discussion had actually occurred two weeks before Harris' murder.

After dinner, Petitioner and Harris went onto the porch. Benson, Sisson and other Mickey Cobras also were present. Benson and Sisson testified that they saw Petitioner shoot Harris. Freeman and her daughter, Nicole, who remained inside, testified that they heard shots coming from the porch. Freeman further testified that Petitioner ran into the house carrying a gun and screaming, "Stones, the Stones are shooting." Freeman asked Petitioner where Harris was and Petitioner said he was coming inside. When Freeman walked onto the porch, she saw Harris lying on the porch bleeding. Initially, Freeman did not see anyone else. Freeman then saw Benson shooting into the air and screaming "Black Stones." Sisson and Two Screws, another Mickey Cobra who also had a gun, were outside as well. Two Screws and Sisson yelled "Black Stones" from a vacant lot across the street. Benson and Sisson testified that they took

2

these actions in order to disguise the nature of Harris' shooting. They said the Mickey Cobras wanted to create the appearance that another gang, the Black Stones, had actually shot Harris.

When the police arrived at the scene, an unidentified man approached them and told the officers that Petitioner was responsible for Harris' death. The police searched for Petitioner and eventually found him five blocks away. The police then questioned Petitioner, Benson, and Freeman. Eventually, Benson confessed to his involvement and identified Petitioner as the shooter. The police subsequently arrested the Petitioner.

On appeal, Petitioner made five claims. Petitioner asserted that: (1) the State did not prove his guilt beyond a reasonable doubt, (2) either Petitioner's counsel was ineffective for failing to object to the admission of Benson and Sisson's prior consistent statements or the trial court committed plain error in admitting the statements, (3) Petitioner's counsel was ineffective for failing to present evidence of Benson and Sisson's prior inconsistent statements to demonstrate that Benson and Sisson were not credible witnesses, (4) the Petitioner was denied a fair trial because the court incorrectly recalled Nicole Freeman's testimony concerning Petitioner's statement regarding reentering Harris' home, and (5) the trial court improperly denied Petitioner's motion to quash his arrest. The Illinois Appellate Court affirmed his conviction, and the Illinois Supreme Court subsequently declined review of Petitioner's case.

Petitioner then sought relief through post-conviction proceedings. There, Petitioner asserted three claims of ineffective assistance of counsel and three claims of ineffective assistance of appellate counsel. Petitioner also claimed that his sentence was excessive. Petitioner alleged that counsel was ineffective because he (1) did not properly investigate the case and failed to interview material witnesses, (2) failed to present available impeachment

3

evidence, and (3) failed to object to certain evidence and to impeach the witnesses. Petitioner also claimed that appellate counsel was ineffective because he did not present these issues on direct appeal. The Circuit Court of Cook County denied the petition for post-conviction relief, and the Illinois Appellate Court subsequently affirmed the holding. The Illinois Supreme Court then declined review of Petitioner's case.

Pursuing relief under 28 U.S.C. § 2254, Petitioner now brings eight claims before the Court. Petitioner asserts denial of his federal constitutional rights on the following grounds: (1) the State did not prove Petitioner's guilt beyond a reasonable doubt, (2) Petitioner's counsel was ineffective because he did not object to the admission of Benson and Sisson's prior consistent statements, (3) the trial court incorrectly based its finding of guilt on Benson and Sisson's improperly admitted prior consistent statements, (4) Petitioner's counsel was ineffective for failing to present evidence of Benson and Sisson's prior inconsistent evidence, (5) the trial court incorrectly recalled Nicole Freeman's testimony while making its finding of guilt, (6) Petitioner's counsel was ineffective because he did not properly investigate Petitioner's case and interview material witnesses, (7) Petitioner's counsel was ineffective for failing to introduce impeachment evidence, and (8) Petitioner's appellate counsel was ineffective for failing to present issues 6 and 7 on direct appeal. The Court will now address Petitioner's claims.

## ANALYSIS

A petitioner is entitled to a writ of habeas corpus if the State is holding the petitioner pursuant to a state court judgment obtained in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A court may not issue a writ of habeas corpus for any claim adjudicated on the merits in state court unless the state decision was (1) "contrary to, or

involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Additionally, a court presumes correct the state court's factual findings, unless a petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

Before a court may address the merits of a habeas petition, however, the petitioner must have provided the state courts with a full and fair opportunity to review his claims. *Boerckel v. O'Sullivan*, 135 F.3d 1194, 1196 (1998), (citations omitted). That is, a petitioner must have exhausted his state remedies, *see* 28 U.S.C. § 2254(b), (c), and may not have procedurally defaulted any of his claims during the state court proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999).

## I. The State Has Waived Procedural Default as a Defense to Claims 1, 3, and 5

The Petitioner has not provided Illinois a full and fair opportunity to review Claims 1, 3, and 5. Fair presentation of federal claims to a state court occurs when the petitioner's state court filings (1) rely on federal cases, (2) rely on state cases conducting a federal constitutional analysis, (3) invoke specific constitutional provisions, or use unmistakable constitutional terms, and (4) present operative facts falling "well within the mainstream of constitutional litigation." *Rittenhouse v. Battles*, 263 F.3d 689, 696 (7th Cir. 2001) (internal quotation omitted); *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992). When a petitioner's state court filings, however, fail on all four of these grounds, as they do here, a petitioner has not fairly presented his federal constitutional claims to the state court. *Moleterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997).

5

The Court, however, can only address whether Petitioner procedurally defaulted his claims if the State has not waived its procedural default defense. *See Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998); *see also Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988) (finding the State waived the procedural default defense for some claims where the State raised the defense for other claims). Because the State has raised the defense of procedural default only with respect to Claims 6-8, the State has waived this defense for Claims 1, 3, and 5. *See Henderson*, 859 F.2d at 498. Accordingly, the Court now turns to the merits of these claims.

## II. Claims 1, 3, and 5 Fail on the Merits

### A. A Rational Trier of Fact Could Have Found Petitioner Guilty Beyond a Reasonable Doubt

Petitioner first contends that the State failed to prove Petitioner's guilt beyond a reasonable doubt. In order to warrant habeas relief, Petitioner must show that no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of first-degree murder beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner has not met this burden.

Petitioner argues that the State based its case on inconsistent accounts of the incident as provided by incredible witnesses, Benson and Sisson. Petitioner asserts that Benson's confession resulted from the withdrawal Benson, a known heroin addict, experienced when the police questioned him for nineteen hours. Petitioner contends that Benson lied to the police so that they would release him and he could get high again. Sisson also told police that Petitioner shot Harris. Sisson, however, later retracted that statement when speaking with a representative from

the Public Defender's Office. If Sisson had not testified to Petitioner's shooting of Harris at Petitioner's trial, Petitioner argues that Sisson would have faced perjury charges.

The Illinois Appellate Court, which reviewed the evidence in the light most favorable to the prosecution, found that the evidence overwhelmingly proved Petitioner's guilt. Significantly, the court pointed to the trial judge's awareness of the factors casting doubt on Benson and Sisson's credibility: their gang affiliations, their involvement with the crime, and their prior inconsistent statements. Accordingly, the Illinois Appellate Court deferred to the trial judge's determination because the judge was in a superior position to observe the witnesses' demeanor and evaluate their credibility.

In viewing the evidence in a light most favorable to the State, the Illinois Appellate Court's decision is consistent with the facts and circumstances of this case. It is a reasonable application of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because Petitioner has failed to meet his burden of establishing that the Illinois Appellate Court applied the facts of his case in an objectively unreasonable manner, the Court rejects Petitioner's request for habeas relief in Claim 1. *See Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam).

### B. The Trial Judge's Admission of Benson and Sisson's Prior Consistent Statements Does Not Amount to a Denial of Fundamental Fairness

Petitioner contends that he was denied his Sixth Amendment right to a fair trial because the trial court improperly considered Benson and Sisson's prior consistent statements that they made to the police. Petitioner asserts these inadmissible statements improperly corroborated Benson and Sisson's testimony at Petitioner's trial. Petitioner further argues that the absence of these statements may have changed the outcome of his trial.

7

On direct appeal, the Illinois Appellate Court held that the trial court properly admitted Benson and Sisson's prior consistent statements to police pursuant to Section 5/115-2 of the Illinois Code of Criminal Procedure. Under Section 5/115-2, prior consistent statements are admissible if the declarant testifies at the trial, the declarant is subject to cross-examination concerning the statement, and the statement is one of identification made after perceiving the person. Benson and Sisson did testify at Petitioner's trial, they were subject to cross-examination, and the statements at issue concern their identification of Petitioner after perceiving him. As a result, the Illinois Appellate Court held that the trial court properly admitted these statements.

Because the admissibility of evidence in a state criminal trial is generally a matter of state law, *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 953 (7th Cir. 1989), this Court can only review Petitioner's claim if the error was "of such magnitude as to deny fundamental fairness." *United States ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1223 (7th Cir. 1974). Specifically, the state court's ruling must be so prejudicial that it compromised the petitioner's due process rights to a fundamentally fair trial thereby creating the likelihood that an innocent person was convicted. *See Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001); *Pierson v. O'Leary*, 959 F.2d 1385, 1389 (7th Cir. 1992).

The admission of Benson and Sisson's prior consistent statements did not result in the denial of fundamental fairness. First, the trial court properly admitted Benson and Sisson's statements under Illinois law as made clear by the Illinois Appellate Court. Second, Benson and Sisson's prior consistent statements, although probative, had a limited effect on the trial judge's determination. It is clear from the record that Benson and Sisson's in-court testimony primarily

8

influenced the trial judge's credibility determination. Accordingly, the Court denies Claim 3 on the merits.

### C. The Trial Judge's Misstatement of Freeman's Testimony Did Not Violate Petitioner's Constitutional Rights

Petitioner asserts denial of his Sixth Amendment right to a fair trial because the trial court incorrectly recalled Nicole Freeman's testimony in reciting the basis for Petitioner's conviction. Nicole Freeman testified that Benson and Petitioner both entered the house after the shooting, overturned the furniture and looked around. Freeman also testified that Petitioner essentially stated, "We got him." Petitioner argues that because the trial judge misquoted the testimony as "I got it," the trial court denied Petitioner a fair trial.

The trial judge's minor misstatement did not deny Petitioner a fair trial. The Court agrees with the Illinois Appellate Court that the judge's misstatement was inconsequential. Accordingly, the Court denies Claim 5 on its merits.

### III. The Illinois Appellate Court Did Not Unreasonably Apply *Strickland v. Washington* to Claims 2 and 4

On direct appeal, Petitioner made two claims of ineffective assistance of counsel. Petitioner argued that counsel was ineffective for failing to object to the prior consistent statements of Benson and Sisson. Petitioner also claimed that counsel was ineffective for failing to present evidence of Benson and Sisson's prior inconsistent statements that cast doubt on Benson and Sisson's credibility.

In order to prevail on his ineffective assistance of counsel claim, Petitioner must satisfy the mandates of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* a claim of ineffective assistance of counsel is established when a

9

Petitioner proves both (1) that his counsel's performance was objectively deficient and (2) that his counsel's deficient performance prejudiced him. *Id.* Under the performance prong, Petitioner must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Under the prejudice prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner must satisfy both of these prongs to prevail on his ineffective assistance of counsel claim. *Se id.* at 697.

Under Section 2254(d), this Court is limited to asking whether the Illinois Appellate Court's *Strickland* analysis was "contrary to, or involved an unreasonable application" of *Strickland.* *See* 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent if the decision is "diametrically different," "mutually opposed," or "substantially different from the relevant precedent." *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Wiggins v. Smith,* 123 S.Ct. 2527, 2534-35 (2003). Even if the state court decision is "contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not 'mutually opposed' to *Strickland* itself." *Williams,* 529 U.S. at 406.

Additionally, in determining whether the Illinois Appellate Court unreasonably applied *Strickland,* this Court is limited to asking whether the Court's application was objectively unreasonable. *Id.* at 409-410. Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Thus, this Court cannot issue a writ if merely concludes the Illinois Appellate Court was incorrect; the Illinois Appellate Court must have been unreasonable. *Id.* at 411; *see also Wiggins,* 123 S.Ct at 2535

10

("[T]he state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable'").

The Illinois Appellate Court found that Petitioner could not prove that his counsel's deficiencies prejudiced him. That is, Petitioner could not "demonstrat[e] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" because the State presented a strong case against him. Significantly, statements made by several witnesses -- Benson, Sisson, Freeman, and Freeman's daughter Nicole -- contradicted Petitioner's version of the events.

The Court cannot say that the Illinois Appellate Court unreasonably applied the *Strickland* analysis to Petitioner's claims on direct appeal. Petitioner could not prove prejudice, the second prong of *Strickland,* in the face of the State's overwhelming evidence against him. Accordingly, the Court denies Petitioner's petition for a writ of habeas corpus for Claims 2 and 4.

## IV. Claims 6-8 Are Not Procedurally Defaulted

Petitioner also asserts ineffective assistance of trial counsel on the following grounds: (1) that trial counsel failed to properly investigate Petitioner's case and failed to interview material witnesses (claim 6), and (2) that trial counsel failed to introduce available impeachment evidence at trial (claim 7). Petitioner also asserts ineffective assistance of appellate counsel for failure to raise Claims 6 and 7 on direct appeal.

The Court first addresses the State's assertion that Petitioner procedurally defaulted these claims for failing to reply to a *Finley* motion during post-conviction proceedings and failing to appeal the denial of his post-conviction claims. The State has not carefully reviewed the record.

Petitioner did appeal his post-conviction claims through the Illinois Supreme Court. In addition, the Illinois Appellate Court, notwithstanding Petitioner's failure to respond to the *Finley* motion, addressed the merits of Petitioner's claims: "We have carefully reviewed the record in this case and the aforesaid brief in compliance with the mandate of *Pennsylvania v. Finley* and find no issues of arguable merit." *People v. Michael Island*, No. 1-99-0234 (Ill.App.Ct. Apr. 5, 2000). In fact, the Illinois Appellate Court's decision on the merits convinced Judge Norgle earlier in this case that Petitioner's habeas petition was timely when the Stated attempted to dismiss the case on those grounds. Accordingly, the Court rejects the State's contention and proceeds to the merits of Claims 6-8.

V.  **Claims 6-8 Fail the *Strickland* Analysis**

Petitioner argues that trial counsel was ineffective because he did not investigate the inconsistency between the recovery of .380 bullet from Harris' brain and the presence of only 9 mm shell cartridges at the scene. He further argues that trial counsel was ineffective for failing to call an expert to explore the effects of heroin withdrawal on Benson's statements to the police and for failing to introduce available impeachment evidence. Petitioner also asserts that appellate counsel was ineffective for failing to bring these claims on direct appeal.

The Court need not address the first prong of the *Strickland* analysis because Petitioner's claims cannot meet the second prong of *Strickland*. That is, Petitioner cannot prove that counsel's deficiencies prejudiced him. *See Strickland*, 466 U.S. at 692. As noted above, Petitioner must demonstrate that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466

U.S. at 694; *see also Wiggins,* 123 S.Ct. at 2535, 2542 (upholding the *Strickland* analysis). Petitioner's claims do not undermine confidence in the trial court's finding of guilt.

Petitioner argues that because a .380 bullet killed Harris, the trial court's outcome is undermined. Petitioner's contention, however, is consistent with the evidence adduced at trial. The evidence showed that at least two guns, a nine-millimeter and a revolver, were present at the scene and that at some point Petitioner either possessed each gun or possessed a gun, the identity of which is unclear. The evidence also showed that a nine-millimeter could fire both nine-millimeter as well as .380 bullets.

Petitioner also contends that trial counsel's failure to call an expert to explore the effects of heroin withdrawal on Benson prejudiced him. Petitioner argues that had an expert explored Benson's heroin withdrawal, it would have undermined Benson's confession. Petitioner also asserts that Benson admitted to lying to the police so that the police would release him. Petitioner has no evidence to support his claims. In light of the trial court's credibility determination regarding Benson, this Court cannot find that the lack of an expert witness prejudiced the outcome so as to call into question the trial's result. *Id.*

Moreover, Petitioner's numerous bits of impeachment evidence also fail to cast doubt on the trial's result. (The Court will only address those claims it finds most compelling.) Among Petitioner's sixteen bits of evidence, Petitioner asserts that Tanya Freeman originally told the police that a person named "Bear" was suspected of shooting Harris while Island was merely a witness, and that Freeman originally neglected to mention Island's entry into the house. This evidence, however, is reconcilable with the events of the day, namely, that Petitioner and the others were trying to create the appearance that a rival gang shot Harris. Under the

13

circumstances, Freeman's first statement to police is not only understandable but fails to undermine the trial court's outcome. Petitioner cannot show that but for his counsel's alleged errors, the result of the trial would have been different.

Petitioner also asserts that Two Screws simultaneously fired at Harris from below the front porch. The fatal wound, however, was to Harris' head, not the front of his person. Thus, this piece of evidence is in accord with the trial court's result.

Petitioner also claims that Harris' wound would show stipling if Harris' shot was inflicted within two feet of his person. Although the evidence placed Petitioner near Harris' person, the evidence produced at trial did not so restrict Petitioner's placement as to require that he stood exactly within two feet of Harris. Consequently, Petitioner's claim regarding the nature of Harris' gunshot wound also fails to cast doubt on the trial court's finding of guilt.

Having considered these and Petitioner's remaining bits of impeachment evidence, the Court holds that Petitioner's claims fail to undermine the trial court's outcome. Therefore, Petitioner's claims fail the second prong of the *Strickland* analysis. Because Petitioner needs to fulfill both prongs of *Strickland* to establish a claim of ineffective assistance of counsel, the Court need not examine whether Petitioner's representation at trial was objectively deficient. Further, because Petitioner cannot make the required showing of prejudice for his claims of ineffective assistance of trial counsel, Petitioner's claim of ineffective assistance of appellate counsel also fails. Accordingly, the Court denies Petitioner's petition for habeas review of Claims 6-8.

## CONCLUSION

For the foregoing reasons, the Court denies Island's petition for a writ of habeas corpus.

Dated: August 14, 2003

　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Amy J. St. Eve
　　　　　　　　　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge